[No. 19809.  *En Banc.*  February 11, 1927.]

THE CANADIAN BANK OF COMMERCE, *Respondent,* v.
WARREN D. KELLOUGH, *Appellant.*[1]

[1] HOMESTEAD (6, 10)—OCCUPANCY—EVIDENCE—SUFFICIENCY.  De-
fendant's claim of a homestead should be disallowed, as not
made in good faith, where he entered upon leased premises by
subterfuge, and on objection by the tenant, remained only two
days until the claim was filed, and made no attempt to secure
possession from the tenant as soon as the law would permit, but
waited until after judgment, execution and sale (PARKER and
FULLERTON, JJ., dissenting).

[2] APPEAL (377)—REVIEW—MATTERS NOT INVESTIGATED IN LOWER
COURT.  The supreme court will not review questions not raised
in the lower court.

Cross appeals from a judgment of the superior court
for King county, Nichoson, J., entered April 25, 1925,
upon findings denying defendant's claim of a home-
stead, though made in good faith, after a hearing upon
the sheriff's return of a sale on execution.  Affirmed.

*John G. Barnes,* for plaintiff-appellant.

*T. W. Bassett, Tucker, Hyland & Elvidge* and
*Mary H. Alvord,* for defendant-appellant.

·ASKREN, J.—On January 23, 1925, there was dis-
tributed to appellant Kellough an undivided one-half
interest in a tract of land and the residence thereon, in
Kent, Washington.  The other half interest was dis-
tributed to his sister, who was the administratrix of
the estate of their mother, through whom the two heirs
inherited.  Prior to the death of the mother and during
the pendency of the probate proceedings, the property
was rented to one Dr. Denny, who was paying rent on
the 15th day of each month.  On January 27 or 28,
Kellough, without an attempt to terminate the tenancy

[1]Reported in 253 Pac. 124.

of Dr. Denny, went to the premises and by subterfuge gained admission to the upstairs of the house, which was not being used by the tenant. He brought his family and a few household necessaries. Appellant stayed in the premises over night, but, upon threats of the tenant, agreed to leave if permitted to spend one more night therein for the stated purpose of making a claim of homestead of the premises. The following day, Kellough left the residence and placed a few household goods in a woodshed on the property, but never lived therein or stayed there at any time. He filed a declaration of homestead during the two days that he was temporarily residing in the upstairs portion of the residence.

In 1924, respondent caused a writ of attachment to be issued against the property in question to secure payment of a note made by Kellough in its favor, and the sheriff, in March, 1924, filed his return showing such levy. The action upon the note resulted in judgment against Kellough in April, 1925, and on June 23, 1925, execution was issued and his interests sold in the usual manner on August 1, 1925. Kellough filed objections to the sale upon the ground that the property in question was a homestead and exempt from execution. Upon the hearing of the objections, it appeared that the tenant was still in possession of the property, but had been given notice on August 23, 1925, to vacate. The court held that the declaration of homestead was filed in good faith, but decided as a matter of law that an owner of property may not claim a homestead thereon while the relationship of landlord and tenant exists with reference thereto.

Kellough appeals from the order denying the right of homestead, and the bank cross-appeals from the finding that the declaration of homestead was made in good faith.

. Much argument has been presented upon the question. of whether one cotenant may declare a homestead on his undivided one-half interest without the consent of his cotenant, but we deem it unnecessary to decide that question, for, if it be admitted that this may be done, the result in this case will not be changed.

[1] Appellant urges that the court erred in holding that he could not make a valid homestead during the occupancy of the premises by a tenant. This, evidently, upon the theory that the court held that one must be living upon the premises to avail himself of the provisions of the statute. If this was the intent of the holding, we cannot agree with such a narrow view of the statute, for it must often happen that one has inherited or purchased premises upon which there is a tenant at the time who cannot be dispossessed except by the notices provided by law. Obviously, in such a situation, the owner may avail himself of the benefit of the statute by declaring that he intends to use the same for a home and by taking such other steps to dispossess the tenant as will allow him to move upon the premises and use them as a home. But in the present case we find that the appellant did not take any action to obtain possession. True, he attempted to enter into possession and be physically thereon with intent to file his declaration; but, as we have already seen, he did this by subterfuge and his action can hardly be characterized as being in good faith; and in so. far as the court found that the declaration was filed in good faith, we must hold that this was error. It is apparent that the purpose of filing this declaration was to avoid the execution upon his property. This purpose will not of itself vitiate the declaration of homestead as long as it is accompanied by acts showing that the premises are used, or intended to be used, as a home. *Gullickson v. Fenlon*, 48 Wash. 503, 93 Pac. 1074; *Schoenheider v.*

*Tuengel,* 96 Wash. 103, 164 Pac. 748. It is also clear that this pretended residence was to legalize, if possible, the declaration of homestead by residing on the premises. In construing a homestead declaration, it must always be borne in mind that the intent of the law is to provide a shelter for the family. The statute, Rem. Comp. Stat., § 552 [P. C. § 7883], does not exempt a piece of property worth a certain sum, but exempts a home. But it was never intended by appellant that he should reside on the premises as a home, for, if such had been his intention and the tenant had refused to allow him to stay thereon, he would have taken immediate action to secure possession as soon as the law would permit. This he did not do, and made no attempt whatever until after judgment was had, execution issued, and the property sold. This was too late. An examination of the evidence convinces us that it preponderates against the finding of the trial court that the declaration of homestead was filed in good faith.

[2] Other questions have been raised by appellant regarding the sufficiency of the writ of execution, but as the questions were not raised in the lower court we will not pass upon them here. *Sanders v. Stimpson Mill Co.,* 34 Wash. 357, 75 Pac. 974; *Creegan v. Thompson,* 136 Wash. 606, 241 Pac. 10.

Judgment affirmed.

MACKINTOSH, C. J., FRENCH, TOLMAN, BRIDGES, MAIN, and MITCHELL, JJ., concur.

PARKER, J. (dissenting):—I am of the opinion that appellant entered upon the premises in good faith, with intent to make his home thereon and with intent to claim the premises as his homestead. The evidence, I think, shows that he went upon the premises believing he had a right to do so, and with color of right as

against the tenant.   While what occurred afterwards, showing some delay in appellant enforcing his right of possession by legal process as against the tenant, may be material evidence bearing upon the question of his original intent at the time of going upon the premises, I think such delay falls far short of proving that his original intent and claim of homestead were not at the time made in good faith.   His homestead right being perfected, as I view this record, by his original going upon the premises with intent to make it his home and, while there, filing his declaration of homestead, such right could be abandoned only by declaration or grant, as prescribed by Rem. Comp. Stat., § 535, [P. C. § 7866], reading as follows:

"A homestead can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged,—

"1.   By the husband and wife if the claimant is married;

"2.   By the claimant, if unmarried."

For these reasons, I dissent.

FULLERTON, J. (dissenting)—For the reasons stated by Judge Parker, I dissent.