[No. 16413.    Department One.    July 8, 1921.]

JAMES O'BRIEN, *Respondent*, v. GRIFFITHS & SPRAGUE STEVEDORING COMPANY, *Appellant*.[1]

APPEAL (370)—REVIEW—THEORY OF CASE IN LOWER COURT. Where, in a personal injury action by a stevedore injured in the hold of a vessel as the result of improper signals given by a hatch tender, the defendant tried the case throughout on the theory that the hatch tender was a vice-principal, it cannot on appeal assume the position that, under the rules of the admiralty courts, a stevedore working in a vessel's hold and the hatch tender are fellow servants in loading the vessel.

DAMAGES (88)—EXCESSIVE—INJURY TO LEG. A verdict for $10,000, for injuries to plaintiff's leg, about five inches above the ankle, for which he was in the hospital sixty-eight days and the leg was rendered about one-half inch short, with a slight backward bow, was excessive, and should be reduced to $5,000.

Appeal from a judgment of the superior court for King county, Allen, J., entered September 22, 1920, upon the verdict of a jury, in an action for personal injuries. Modified.

*Trefethen & Findley*, for appellant.

*James R. Gates* and *Henry W. Pennock*, for respondent.

MACKINTOSH, J.—The appellant was loading a vessel in the Seattle harbor and employed the respondent, who was stationed in the hold, stowing away railroad rails, which were being handled under the direction of a hatch tender stationed on the upper deck, one of whose duties was to signal the winch drivers. The negligence alleged against the appellant is that the hatch tender gave the winch drivers improper signals which resulted in a load of rails striking the respondent's legs, causing a fracture of the right leg about five inches above the ankle, from the effect of which injury

[1]Reported in 199 Pac. 291.

the respondent lay in the hospital for sixty-eight days, and the limb has been left 2/5ths to 1/2 inch short, with a slight backward bow.

The appellant complains of the verdict of $10,000 on two grounds; first, that there was not sufficient evidence to justify it, and, second, that it is excessive.

The argument of the appellant upon the first point is that the rules of the admiralty courts should have been applied to this action, although it admits that the state court had concurrent jurisdiction over it with the admiralty court. Its argument is based upon the fact that, under the rules of admiralty, the hatch tender and the respondent were fellow servants. This objection cannot now be urged for the following reason: the appellant from its first appearance in this case until the filing of its briefs, tried the case upon the theory that the common law rules of fellow servant, as they have been established by the decisions of this court, were governing. No mention was made in the pleadings or at the trial of the applicability of any rule of admiralty. The appellant's answer was a common law answer and plead the common law defenses. No attack was made upon the respondent's pleadings wherein it was alleged that the hatch tender was a vice-principal. No evidence was introduced or contention made throughout the trial that this was not the relationship between the hatch tender and the respondent. The appellant's defense was that the negligence which proximately caused the injury was that of the yardarm winchman, and that he was a fellow servant. No instructions were proposed by the appellant advancing the fellow-servant rule nor its applicability to the hatch tender; no exceptions were taken to instructions which were given upon the theory that the hatch tender was a vice-principal, and in this court, for the first time, it

is suggested that the admiralty rules govern the case. This court has held in *Jacobsen v. Rothschild,* 62 Wash. 127, 113 Pac. 261, that a hatch tender, as to an employee in the respondent's position, occupies the relationship of vice-principal to him. The case cannot be presented by the pleadings and proof and instructions in the lower court upon one theory, and then presented for the first time in this court upon a different one. As we said in *Driver v. Galland,* 59 Wash. 201, 109 Pac. 593:

"But there is another reason why the appellants cannot prevail in this case. It has been the uniform holding of this court that we will determine a case here upon the theory upon which it was tried below, and that alleged errors which are not called to the attention of the lower court could not be reviewed here. . . . In order to determine exactly what was tried below and what it was the intention of the parties litigant to try, we must resort to the pleadings and the testimony offered, the instructions of the court, instructions objected to and instructions asked, and to the character of the trial generally."

The supreme court of Wisconsin, considering this same question, has this to say; in the case of *Leora v. Minneapolis, St. P. etc. R. Co.,* 156 Wis. 386, 146 N. W. 520:

"At the threshold of this case we are met with the objection that the plaintiff was employed in interstate commerce when injured, and hence that the case is governed by the federal statute regulating actions for injuries suffered by employes of interstate carriers.

"This objection was not made in the trial court, nor was it made in the briefs filed in this court upon the appeal, but was first raised upon the oral argument. The question is important and far reaching. It is not in the strict sense, a jurisdictional question, because the court has power to try the case whichever law be applicable. If a defendant can carry its case through

the trial court without raising the question of the application of the federal law, and, when defeated, come to this court and for the first time raise the question successfully, it possesses a very valuable advantage. It can experiment through both courts with one law and, if defeated, commence over again under the other law, thus securing two trials, even though the first trial be without objection or exception. Such a conclusion should not be reached unless it is inevitable. Every instinct of fairness and justice cries out against it. It is a question which seems likely to occur with more or less frequency so long as the two laws exist side by side with varying and contradictory provisions on essential matters. The line which divides employment in interstate commerce from employment in intrastate commerce is at times very shadowy and difficult to draw. If the question may lie dormant in the trial court and be raised for the first time in the court of last resort, it is very certain that many a case fairly tried under the terms of one law, and in which every right secured to the parties by that law has been carefully safeguarded, will have to be reversed and a new trial awarded because of an objection never brought to the attention of the trial court.

"There is a well established legal principle which forbids this result, and that is the principle of consent or waiver. This principle has been frequently applied in cases where it is claimed in the appellate court for the first time that a law, under which a recovery has been had in the trial court, is unconstitutional."

See, also, on this same point: *Rice v. Stevens,* 9 Wash. 298, 37 Pac. 440; *Yarwood v. Billings,* 31 Wash. 542, 72 Pac. 104; *Sanders v. Stimson Mill Co.,* 34 Wash. 357, 73 Pac. 688; *Normile v. Thompson,* 37 Wash. 465, 79 Pac. 1095; *Standard Furniture Co. v. Anderson,* 38 Wash. 582, 80 Pac. 813; *Nielsen v. Northeastern Siberian Co.,* 40 Wash. 194, 82 Pac. 292; *Lesser Cotton Co. v. St. Louis etc. R. Co.,* 114 Fed. 133; *Union Pacific R. Co. v. Whitney,* 198 Fed. 784; *Pine Belt Lumber Co. v. Riggs,* 80 Okl. 28, 193 Pac. 990; *Wickern v. United*

*States Express Co.,* 83 N. J. 241, 83 Atl. 776; *Madden v. Hughes,* 185 N. Y. App. 466, 78 N. E. 167; *Hanson v. Chicago, M. & St. P. R. Co.,* 157 Wis. 455, 146 N. W. 524; *Chicago etc. R. Co. v. Rogers,* 150 S. W. (Texas) 281.

Upon the second point, we are constrained to agree with the appellant's position. So far as our examination has led us, we cannot find any verdict in this amount which has been allowed to stand for any injury similar to that suffered by the respondent. Under all the circumstances of the case, and taking into consideration the earning power of the dollar, the verdict is grossly excessive and should be reduced to the sum of $5,000, and the order of the court, therefore, will be that if the respondent will within 30 days after the receipt of the remittitur by the superior court, consent in writing to take a judgment in the amount of $5,000 then a new judgment shall be entered in his favor for that sum, otherwise the trial court is instructed to grant appellant a new trial.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.