747 P.2d 1315

**Donna L. ARNOLD, Plaintiff–Respondent,**

v.

**Melrose L. BURGESS and Berniece Burgess, husband and wife; S. Wayne Burgess and Carol J. Burgess, husband and wife, Defendants–Appellants,**

**and**

**M. Edmond Burgess, formerly doing business as Burgess Farms, Defendants.**

No. 16094.

Court of Appeals of Idaho.

Dec. 3, 1987.

788

Thomas H. Church of Church, Church, Snow & Tuft, Burley, for defendants-appellants.

Richard D. Greenwood of Stephan, Slavin, Kvanvig & Greenwood, Twin Falls, for plaintiff-respondent.

WALTERS, Chief Judge.

Donna Arnold brought this action to obtain a judgment based upon allegedly inequitable in-kind distributions of partnership property during the attempted winding up of Burgess Farms, a family partnership.

The trial court entered judgment for the principal sum of $69,927.50, plus $36,232.02 in prejudgment interest, against four of her former partners. The appeal by her partners presents three primary issues: (1) Did the court erroneously find that an account stated or settlement agreement existed among the parties? (2) Did the evidence support the court's finding that Arnold was entitled to the principal sum of the judgment? and (3) Did the court err by granting prejudgment interest from the date of dissolution of the partnership? Because we conclude that the trial court grounded its decision upon a restitution theory, rather than an express contract theory, we do not reach the first issue. We affirm the principal award, but on grounds other than the theory of "unjust enrichment" applied by the trial court. We also affirm the award of prejudgment interest, but direct the trial court to correct a clerical error in the judgment.

The parties to this action are Melrose and Berniece Burgess, husband and wife, S. Wayne and Carol Burgess, husband and wife, and M. Edmond Burgess and his former wife, Donna Arnold. Wayne and Edmond are the sons of Melrose and Berniece. Although Edmond Burgess elected not to be a party to this appeal, for simplicity we will refer to the collective appellants as either the "Burgesses" or the "defendants," and to the former Mrs. Edmond Burgess as "Arnold."

The following facts are drawn from the trial court's findings. In 1969 these three couples orally formed a partnership known as Burgess Farms. A certificate of partnership was later recorded, but a written partnership agreement was never drafted. From 1969 until 1980 they farmed a number of parcels in the area of Paul, Idaho. During the later years they also operated a fresh-pack potato marketing business. Profits and losses were shared equally. The businesses were jointly managed. Title to the various parcels of real property was held either separately or jointly by the individuals, but not in the name of the

partnership. The farmland was jointly mortgaged to secure obligations of both the partnership and of the individuals.

Unfortunately, an eye injury suffered during the 1976 season prevented Edmond Burgess from continuing full participation in the operation of the farm. In addition, cooperation declined as Arnold became increasingly dissatisfied with the management of the businesses. Therefore, on December 31, 1980, the partnership was dissolved. Soon thereafter, Edmond Burgess and Donna Arnold began divorce proceedings.

During the ensuing three years, the partners undertook to wind up the affairs of the partnership. Because Melrose and Wayne Burgess desired to continue farming, the partners attempted to liquidate the assets by a series of in-kind distributions. First, the 1980 potato crop was distributed. By agreement of the parties, an imbalance in this distribution was to be corrected at final settlement of the partnership. Later, the farm machinery was also disproportionately distributed. Other assets were similarly divided. Certain real property was exchanged, apparently to produce more efficient farming units for each couple, to separate title, and to remove some financial disparity. Partnership losses for the 1980 agricultural season were borne by the defendants. As each distribution was made, preliminary statements of account were prepared or adjusted.

Ultimately, all assets and obligations were distributed except for partnership debts owed to the Farmers Home Administration (FmHA) and the Federal Land Bank of Spokane (FLB). Apparently the delay in winding up resulted in a failure to make payments to FmHA and FLB. All of the parties remained jointly and severally liable to these creditors. Unfortunately, no final accounting or settlement satisfactory to all partners was ever achieved.

When Arnold concluded that a satisfactory termination of the partnership would not be forthcoming, she filed this action. She claimed that approximately $153,000 was due her and Edmond from the other partners because of the disproportionate distribution of assets. Her complaint asserted two counts. Count I was grounded upon an alleged settlement agreement among the partners. Count II recited:

That on or about July 1, 1981, the partnership known as Burgess Farms was dissolved and the plaintiff and defendant, M. Edmond Burgess, were entitled to the sum of One Hundred Fifty-three Thousand One Hundred Ninety Dollars ($153,190.00) from the other partners for their equity in the partnership assets conveyed to the other partners as part of the partnership dissolution.

Both the defendants' answer and the trial court's decision treated this assertion as a claim of unjust enrichment. The defendants denied the claim and asserted that Arnold had failed to negotiate in good faith.

The trial court found that on the date of dissolution the capital accounts were "equal." The court also found that at least one statement of account—although never approved by all parties—reflected the true state of partnership affairs. This exhibit indicated that as a result of prior distributions $139,859 was due Edmond from Melrose and Wayne, and that they had offered to assume a share of Edmond and Arnold's debt to FmHA as compensation. The court concluded that the disproportionate distribution of assets constituted "unjust enrichment" of the defendants at the expense of Arnold and entered judgment in her behalf for one-half of the amount owed to her and Edmond. In addition, the court awarded prejudgment interest running from the date of dissolution.

The court found no bad faith in Arnold's acts during the attempted winding up. After acknowledging that the termination of a family farm partnership can be a particularly painful and difficult process, the court concluded that Arnold's rejection of the Burgesses' offer to assume her debt was reasonable in light of their inability to obtain a release for her from FmHA.

## I

The Burgesses appeal with respect to both express contract and unjust enrichment theories of recovery. However, as described below, our review of the record indicates the trial court's judgment rested only upon the latter concept.

■ The court found that there had been *no* meeting of the minds regarding a final accounting. Although the court relied upon various "statements of account," these are distinct from "accounts stated." A statement of account is a mere rendition of an account. *See* BLACK'S LAW DICTIONARY 1263 (5th ed. 1979). Some form of assent or agreement is required to convert it to an account stated. *Kugler v. Northwest Aviation, Inc.*, 108 Idaho 884, 887, 702 P.2d 922, 925 (Ct.App.1985). That is, the former is an oral or written *statement*, a form of evidence; the latter is a *contract*, a concept of law. The trial court's findings refer to statements of account, not to accounts stated.

We have reviewed the court's written decision and the transcript of the judge's oral pronouncements at the completion of trial and are satisfied that the decision was based upon a restitution theory. Because the court did not find an express contract, we need not address the Burgesses' claim that the court erred in such a finding.

## II

We turn next to the Burgesses' argument that the trial court erred in reaching the conclusion that they had been unjustly enriched. They contend that no benefit was conferred by asset and liability distributions because an FmHA foreclosure subsequent to entry of judgment deprived them of any benefit they might have enjoyed. The Burgesses argue that the inevitability of this foreclosure was established by unrefuted evidence that the foreclosure proceeding had begun and that the value of the security was substantially less than the amount of the debt to FmHA. In contrast, Arnold argues that she was entitled to an accounting and, therefore, the court's finding of unjust enrichment was "nonprejudicial surplusage."

■ We begin our analysis by briefly reviewing the law of partnerships. "A partnership is an association of two (2) or more persons to carry on as coowners a business for profit." I.C. § 53–306(1). "The dissolution of a partnership is the change in relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." I.C. § 53–329. Dissolution does not terminate a partnership, it simply alters the authority of the partners with respect to partnership business. The partnership continues until the winding up of partnership affairs is completed. I.C. § 53–330; *Heileson v. Cook*, 108 Idaho 236, 697 P.2d 1250 (Ct. App.1985). Winding up is the process of settling partnership affairs after dissolution. Uniform Partnership Act § 29, 6 U.L. A. 365, Official Comment (1969). Where partners mutually agree to a dissolution, any partner has the right to wind up partnership affairs in accordance with the agreement. I.C. § 53–337; *Burnham v. Bray*, 104 Idaho 550, 557, 661 P.2d 335, 342 (Ct.App.1983). Upon cause shown, any partner may obtain winding up by the court. I.C. § 53–337. In such an action a court may enter a money judgment as the state of the partnership accounts may require. *See Johnston v. Ellis*, 49 Idaho 1, 285 P. 1015 (1930); *Holman v. Cape*, 45 Wash.2d 205, 273 P.2d 664 (1954); 68 C.J.S. *Partnership* § 445(e), at 999 (1950).

■ Generally, the only action which will lie between partners regarding partnership business is an action for an accounting. *See Haskins v. Curran*, 4 Idaho 573, 43 P. 559 (1895); *Clark v. Edris*, 120 Ariz. 244, 585 P.2d 264 (Ct.App.1978). *See generally* Annotation, *Actions at Law Between Partners and Partnerships*, 21 A.L.R. 21, s. 58 A.L.R. 621, s. 168 A.L.R. 1088 (1947). An accounting is an equitable proceeding for comprehensive investigation of transactions and adjudication of the

rights of the partners. A. BROMBERG, CRANE AND BROMBERG ON LAW OF PARTNERSHIP § 72 (1968). Other actions are premature until the business is wound up and accounts settled. *Clark v. Edris, supra.* "This rule is based upon the inconvenience to the parties, the fact that equitable relief may be necessary to protect the right of the parties, and the notion that only after a balance has been struck can the relative rights of the parties be established." *Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1075 n. 23 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Dissolution alone does not change this rule. 1 CAVITCH, BUSINESS ORGANIZATIONS WITH TAX PLANNING § 20.03[9] (1986). If partners are unable to settle their own affairs, an action in equity for an accounting is the appropriate, and sometimes exclusive, remedy to adjust and settle the affairs of a partnership. *Watts v. Adler,* 130 N.Y. 646, 29 N.E. 131 (1891).

■■■ The ultimate goal of an accounting is to ascertain the value of a plaintiff's interest in the partnership as of the date of dissolution and then to determine any profits attributable to the use of the plaintiff's right in the property of the dissolved partnership. *Timmerman v. Timmerman,* 272 Or. 613, 538 P.2d 1254 (1975). "[A] final account is the one great occasion for a comprehensive and effective settlement of all partnership affairs. All the claims and demands arising between the partners should be settled upon such an accounting." *Weidlich v. Weidlich,* 147 Conn. 160, 157 A.2d 910 (1960). The decree in an accounting action should provide for a final adjustment of all controverted questions before the trial court with respect to a partnership accounting and distribution. *Barron v. Koenig,* 80 Idaho 28, 324 P.2d 388 (1958). Ordinarily, in any action to terminate a partnership the trial court will order liquidation of the partnership assets by sale, with application of the proceeds according to the priorities set forth in I.C. § 53–340. *See, e.g., Dunn v. Baugh,* 95 Idaho 236, 506 P.2d 463 (1973).

Here, the parties agree that the partnership had been dissolved. The trial court concluded that despite the continued efforts of all partners a final settlement had not been achieved. Instead, repeated delays resulted in increasing frustration and a failure to make payments to major creditors. The court found that all partnership assets had been distributed among the partners, but that joint liabilities to FmHA and FLB remained unsatisfied. Relying primarily upon documents prepared by the parties during their efforts to reach an agreement, the court found that Edmond Burgess and Donna Arnold had received less than their partners from this preliminary distribution of assets.

The trial court concluded that the defendants had been "unjustly enriched." The court entered a judgment in favor of Arnold against the Burgesses—excluding her former husband, Edmond—for the difference between the asset share distributed to the Burgesses and that share distributed to Arnold. The court took no action with respect to the remaining joint liabilities.

### A

The Burgesses argue that the evidence did not support the finding of unjust enrichment. In particular, they contend that unrefuted evidence established that any benefit from any inequitable asset division would be eliminated by an impending foreclosure. As explained below, because our analysis leads us to agree with Arnold that a finding of unjust enrichment was unnecessary to the judgment, we conclude that the evidence of foreclosure is not relevant to this issue. Instead, we consider it with respect to the form of the judgment in Part IIB of our opinion.

By express agreement, winding-up partners may agree to an in-kind division of assets. *See* 2 Z. CAVITCH, *supra* § 37.03 (1986). The trial court found that preliminary divisions of obligations and in-kind distributions of assets provided more value to the Burgesses than

to Arnold. In reaching this conclusion, the court relied upon documents prepared by the parties and by professional appraisers employed by the partnership during the attempted winding up. Arnold presented substantial evidence that these asset distributions were acknowledged by the parties to be disproportionate. The trial court concluded that further delay in winding up this partnership would be unfair to Arnold and serve no useful purpose. To avoid "unjust enrichment" of the defendants the court entered a judgment equal to Arnold's share —plus prejudgment interest—of the balance owed to her and Edmond.

It appears that the defendants, not the plaintiff, Arnold, first characterized her complaint as one for unjust enrichment. Count II of the complaint alleged simply that Arnold was "entitled" to recover a certain sum. "The principle against enrichment, important as it is, does not solve all the problems of restitution cases, even given a Solomon to apply it. Much of the law of restitution in fact deals with economic adjustments to be made when things do not work out quite as expected...." D. DOBBS, HANDBOOK OF THE LAW OF REMEDIES 227 (1973). Restitution may be appropriate even where a defendant has honestly gained a benefit. *Id.* at 224.

■ We note that historically restitution encompassed the common law action for an accounting. *See* DOBBS, *supra* 252 to 254. Here, the decision is of the character of an accounting with respect to Arnold. Pursuant to I.C. §§ 53–337 and –343 Arnold was entitled to an accounting and judicial winding up of partnership affairs. Although Count II of Arnold's complaint did not specifically refer to the statutory authority discussed earlier in this opinion, it did invoke the court's equitable restitutionary powers. Although we might prefer that the trial court had grounded Arnold's right to an accounting in the partnership statute, rather than in unjust enrichment or restitution, an appellate court will not set aside a judgment merely for failure to adhere to a matter of form where no injus-

tice has been done and a correct result has been reached. *See Doyle v. Polle*, 121 Vt. 335, 157 A.2d 226 (1960). After examining Arnold's complaint and the substance of the later proceedings, we have concluded that Arnold established her right to an accounting, whether or not the Burgesses had been unjustly enriched.

**B**

■ However, we find the manner in which the trial court resolved this action to be somewhat troubling. As noted above, ordinarily a trial court will wind up a partnership by ordering liquidation of the assets and payment of any partnership debts. Here, the trial court found that the preliminary statements of account represented the state of asset and obligation distributions by the parties up to the date of the trial. The court sorted through the various exhibits and accepted a statement apparently prepared by the three male partners as accurately reflecting the final state of partnership affairs. The court determined that a full, new accounting was unnecessary to a resolution of the issues. In the trial court's opinion, the only significant accounting issues remaining were: (1) whether the Burgesses were entitled to reimbursement for machinery contributed when the partnership formed, and (2) whether Arnold should recover via a judgment or was limited to the compensation offered, i.e., assumption by the Burgesses of Arnold's share of the partnership debts.

The court rejected the machinery contribution claim and granted a money judgment to Arnold. Apparently because Arnold sought simply to be reimbursed for disproportionate asset distributions, and not to compel a potentially harmful liquidation sale as the means of compensating her interest under I.C. § 53–338, the court did not order a liquidation of partnership assets to satisfy the FmHA and FLB debts. Thus, this case presents the question whether a trial court may simply enter a money judgment for one partner against the remaining partners when substantial partnership liabilities are outstanding.

A forced sale of partnership assets will often destroy a great part of the value of the business and may prevent the continuation of a valuable source of livelihood for former partners. *See generally* CRANE AND BROMBERG, supra § 86; and H. REUSCHLEIN AND W. GREGORY, HANDBOOK ON THE LAW OF AGENCY AND PARTNERSHIP §§ 227–229 (1979). In the instant case, the ordinary decree might well have harmed both Arnold and the Burgesses. Other courts have permitted alternative resolutions of partnership interests similar to that reached here. *See, e.g., Johnston v. Ellis*, 49 Idaho 1, 285 P. 1 1015 (1930) (upholding order to distribute bonds among partners); *Swarthout v. Gentry*, 62 Cal.App.2d 68, 144 P.2d 38 (1944) (upholding order of in-kind distribution); *Gelphman v. Gelphman*, 142 Kan. 582, 50 P.2d 933 (1935) (retiring partner ordered to convey interest to continuing partners). *See generally* 2 CAVITCH, *supra* § 37.02[1][b].

■ All parties had an opportunity to present evidence and to argue the state of the partnership account. No objection was raised to the manner in which the trial court proceeded. A full new accounting is not always necessary to resolve a dispute among partners. *See, e.g., Amberson v. Horton*, 255 S.W.2d 580 (Tex.Civ.App. 1953). *Compare Dalton v. Austin*, 432 A.2d 774 (Me.1981) (affirming trial court's rejection of independent unjust enrichment action in light of confused winding up). "Even though a court does not adhere strictly to the statutory procedure for accounting between partners, a partner has no right to later complain if, at the time of the accounting, he made no objection to the procedural pattern set by the court and he was not prejudiced thereby." 1 CAVITCH, *supra* § 20.06[1][f]. (Footnote omitted.)

■ Aside from two joint mortgages remaining, the court's decision settled the partnership's accounts with respect to Arnold, while allowing the remaining partners to pursue a mutually satisfactory settlement that might save their individual farming enterprises. Under the circumstances, the trial court could do little more. Ordinarily, non-party creditors may not be prevented from looking to any partner for the full amount of the debt if the general partnership cannot pay. *Briley v. Briley*, 51 Ala.App. 671, 288 So.2d 733, 738 (1974); *see also Barron v. Koenig*, 80 Idaho 28, 324 P.2d 388 (1958). Because the exceptions created by I.C. § 53–336 for a consensual release by the creditor are not applicable here, the district court's decree could not have undertaken to determine the rights of FmHA and FLB, who were not parties. *See generally* 68 C.J.S. *Partnership* § 445(d) (1950). Nor could the court have directed that these debts be assumed by a particular partner with a release of others.[1]

As a result of the court's approach, the partners are free to continue their efforts to wind up the remaining partnership affairs. The trial court found:

> There has been no disproportionate contribution by the respective partners in the satisfaction of the Burgess Farms Partnership debt due Farmers Home Administration and Federal Land Bank of Spokane that has not been properly accounted for between the partners to the date of trial.

Arnold remains liable to her partners for her share of that indebtedness remaining on the two mortgages after the dissolution. Should it become necessary, the other partners may compel contribution from her for the two partnership debts. Without liquidating the partnership assets, a course of action not sought by any of the parties, the court could do no more without potentially harming the non-party creditors. *See* I.C. § 53–334 and § 53–336.

The result reached here differs little from a voluntary settlement with an in-kind

---

1. Apparently the remaining creditors have not been harmed by the court's decree. The creditors' security remains in the hands of the joint debtors and no attempt has been made to conceal or dispose of assets aside from distribution among parties.

distribution of assets and a cash payment to correct inequitites among the partners, plus two remaining joint liabilities subject to contribution rights. Although in substance the result is an incomplete judicial accounting and winding up, it would not serve the policy of judicial efficiency to remand for a judgment amendment not sought by either party. Satisfaction of the judgment will correct those inequities resulting from the preliminary inequitable distributions of partnership assets and liabilities and place the parties on an equal footing.

We are satisfied that the form of this court's judgment is consistent with the statutory method of judicially winding up partnership affairs. The court resolved all controversies presented to it by the parties. If the parties desired a more complete judicial winding up, they should have acted to obtain one. *See Patterson v. Ware*, 10 Ala. 444 (1846). The parties did not request a judicial termination of the partnership. We hold that the court did not err by entering a money judgment in favor of Arnold.

## C

After reviewing the record, we find no merit in the Burgesses' various challenges to the court's accounting. The trial court weighed the evidence and determined the credibility of the testimony presented. As set forth below, the court determined that the debt owed to Arnold and her ex-husband totaled $139,859.00 and that the net amount owed to Arnold was $69,927.50:

Owed to Edmond Burgess and Arnold:

| | |
|---|---|
| For disproportionate machinery distribution | $ 24,701.00 · |
| Disproportionate real estate distribution | 40,368.00 |
| Disproportionate livestock distribution | 2,475.00 |
| Disproportionate potato crop distribution | 20,240.00 |

Owed to Edmond Burgess and Arnold:

| | |
|---|---|
| Partnership improvements to defendants' property | $132,863.00 |
| Potato harvest payment by Edmond and Arnold | 1,488.00 |
| Potato "go-between" payment by Edmond and Arnold[2] | 773.00 |
| Total debt owed to Edmond Burgess and Arnold by their former partners | $222,908.00 |

Credited to defendants:

| | |
|---|---|
| Improvements to property of Edmond and Arnold by partnership | $ 4,333.00 |
| Debt reduction by agreement (reason unknown)[3] | 20,967.00 |
| Seasonal farming losses for 1980 season assumed solely by defendants | 47,345.00 |
| Retained partnership receipts by Arnold | 2,369.00 |
| FLB payment by defendants | 7,602.00 |
| Property tax payment by defendants | 433.00 |
| Sum of credits due defendants | $ 83,049.00 |

Recapitulation:

| | |
|---|---|
| Net balance owed to Edmond Burgess and Arnold | $139,859.00 |
| Arnold's share of the balance owed | $ 69,929.50[4] |

The court rejected those claims which it found to be specious. Our review of the record discloses that the court's accounting was supported by substantial, competent evidence. I.R.C.P. 52(a); *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct. App.1983).

## III

Finally, we examine the court's inclusion of prejudgment interest in the judgment. The law with respect to interest from the date of dissolution of a partnership to the date of judgment was set forth in *Elliott v. Elliott*, 88 Idaho 81, 87, 396 P.2d 719, 722 (1964):

While it is quite impossible to lay down any unbending rule on the question

---

2. Although the trial court's findings incorrectly list this payment as $733.00, this typographical error was not reflected in the final judgment.

3. This adjustment was shown upon a document introduced by defendants and has not been contradicted by Arnold. Although not one of the witnesses was able to clearly explain this figure, it apparently reflected a compromise regarding the value of real estate improvements or capital contributions by the defendants.

4. Apparently due to a clerical error the trial court entered a judgment for $69,927.50. On remand the court is directed to correct this discrepancy.

whether interest should be allowed or disallowed on partnership accounts, the general rule appears to be that in the absence of an agreement to the contrary, interest is not to be allowed on partnership accounts until after a balance is struck, but may be charged if under the circumstances of the particular case the equities so require. Its allowance or disallowance is, to a large extent, discretionary with the court, and depends largely on the circumstances of the particular case.

(*quoting* 40 AM.JUR. *Partnership* § 353). *See generally* Annotation, *Interest—Allowance to Partners*, 66 A.L.R. 3, § IV (1930). In addition, partners are accountable for profits and benefits derived from the use of partnership assets during the winding up period. *See* I.C. § 53–321. Where it is impossible to account for a partnership's profits during a long period of winding up, rent and interest may be awarded as an alternative method of sharing the benefits. *Murgoitio v. Murgoitio*, 111 Idaho 573, 726 P.2d 685 (1986).

At the close of trial, the court orally announced that Arnold was "no more at fault than anyone else for the fact that it took all this much time to get her share of the equities that were distributed to everybody else...." The court noted that in the interim the Burgesses "had the benefit of using those things." It is implicit in the court's closing statement that the court awarded prejudgment interest as an alternative to an accounting for profits from the use of partnership assets during the prolonged winding up. The circumstances here are similar to those set forth in *Murgoitio*, where the partners also sought to keep a business active during the winding up period. Like our Supreme Court in *Murgoitio*, we cannot say that the imposition of interest was improper. We hold that the trial judge acted within his discretion when awarding prejudgment interest.

The trial court is directed to amend the judgment as set forth at note 4, *supra*. As so modified, the judgment is affirmed.

Statutory postjudgment interest shall accrue on the amended judgment from the date of the original judgment. Costs to respondent, Donna Arnold. No attorney fees awarded.

BURNETT and SWANSTROM, JJ., concur.